*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1829**

State of Minnesota,
Respondent,

vs.

Abass Warsame Mumin,
Appellant.

**Filed November 28, 2016
Affirmed
Jesson, Judge**

Stearns County District Court
File Nos. 73-CR-15-2572, 73-CR-15-2907

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Bjorkman, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Abass Warsame Mumin argues that the district court erred by denying his pre-sentence motion to withdraw his *Alford* guilty plea to two offenses and sentencing him

on those offenses. He maintains that his pleas were not accurate, voluntary, or intelligent, and the district court abused its discretion by declining to allow plea withdrawal because it would be fair and just to do so. We affirm.

**FACTS**

In March 2015, Mumin was charged with fifth-degree domestic assault after police were dispatched on a report of a domestic disturbance at a gas station. According to the complaint, when police arrived, witnesses indicated that Mumin had been arguing with his wife. A security videotape showed that Mumin had been standing over her and that she was struggling with him. Police took a statement from a gas-station employee, who stated that she had seen Mumin bite his wife in the face. The next day, the district court issued a domestic abuse no-contact order prohibiting Mumin from contacting his wife. The day after that, at a pre-trial hearing, court personnel observed Mumin attempting to speak to his wife, who was seated in the back of the courtroom. He was then charged with violating the domestic abuse no-contact order. Both charges were enhanced to felonies based on Mumin's prior criminal record.

On April 30, Mumin pleaded guilty with an *Alford* plea to both offenses.[1] The plea agreement provided for concurrent presumptive sentences of 24 and 27 months, respectively, with a dispositional departure of probation, requiring Mumin to follow

---

[1] In entering an *Alford* plea, a defendant maintains his innocence, but acknowledges that the record establishes his guilt and that he reasonably believes that the state has sufficient evidence to secure a conviction. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970); *see also State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977) (recognizing *Alford* pleas in Minnesota).

conditions of release. At the plea hearing, Mumin's attorney stated that the agreement required Mumin to follow the conditions, and that if he did not do so, the state was "free to argue for additional jail and/or prison time at the time of sentencing."

On questioning by the court, Mumin stated that he wished to proceed by accepting the offers and that he understood that the agreement required him to follow all conditions of release. He agreed on the record to waive his trial rights and stated that he had time to discuss the plea offer with his attorney and had no questions. He indicated that he had received mental-health treatment in the past and was currently on mental-health medications. But he told the court that he had a clear mind and understood everything that was happening at the hearing, the agreement he was entering, and what it required him to do.

As a basis for the domestic-assault plea, Mumin first testified, in response to his attorney and the court, that he stopped at a gas station in Stearns County with his wife, "and that's about it." The court then directed the prosecutor to take over questioning. In response to the prosecutor's questions, Mumin denied that he was arguing with his wife. But he agreed that the police reports contained certain statements that would support a factual basis for his plea. And he stated his agreement that, based on all of the evidence listed in the complaint, there was a substantial likelihood that the jury would find that he committed an act with an intent to cause fear in his wife of immediate bodily harm or death.

Mumin also testified that he knew of the domestic-abuse order for protection, which prevented him from having direct or indirect contact with his wife, and that witnesses would testify that they were in the courtroom and saw him speak to his wife. And he agreed

3

that if the jury heard the evidence, there was a substantial likelihood that they would find that he had intentionally violated the order by conversing with his wife in the courtroom. The district court found that Mumin had provided a sufficient factual basis for his *Alford* plea to both offenses and accepted the plea with conditions of release.

About two months after the plea but before sentencing, probation reported two violations of release conditions relating to Mumin's use of controlled substances. Mumin then moved to withdraw his plea. At a district court hearing, Mumin acknowledged that he violated conditions of release. But he testified that at the plea hearing, he was only answering questions the way his attorney had told him to. He testified that he remembered his attorney telling him that he could get into trouble for violating conditions of release, which he thought meant that he might go to jail, but he was not aware he could go to prison. He stated that he did not remember pleading guilty with an *Alford* plea and that he suffers from short-term memory loss. He stated that he "was never going to be found guilty" and that he "just pleaded just to get out of it" and to "get the deal so I can go home."

The district court denied the plea-withdrawal motion. The district court observed that Mumin had the burden to show that his plea was not voluntary or intelligent and that his attorney at the plea hearing stated on the record that if he did not comply with release conditions, he would be facing prison time. The district court found that Mumin had stated that he understood and was waiving his trial rights, and that he was not agreeing to plead just to get out of jail. The district court also found that it would not be fair and just to allow plea withdrawal, even before sentencing. The district court therefore adjudicated Mumin guilty of both offenses and ordered concurrent, executed sentences of 21 months on the

4

domestic-assault conviction and 24 months on the conviction for violating the domestic no-contact order. This appeal follows.

## D E C I S I O N

Mumin challenges the district court's denial of his motion to withdraw his guilty plea, arguing that he met the standards for grounds for plea withdrawal in Minnesota Rules of Criminal Procedure 15.05. This rule contains two different standards for plea withdrawal. First, a defendant may withdraw a guilty plea even after sentencing if he or she shows that "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Second, a defendant may withdraw a plea before sentencing if it is "fair and just" to allow that person do so. *Id.*, subd. 2. Mumin argues that he met the standards for withdrawing his guilty pleas on both grounds.

### A. *No manifest injustice occurred.*

Mumin first argues that withdrawal of his plea is required to correct a manifest injustice. If a review of the record shows that the manifest-injustice standard is met, we need not review the plea under the fair-and-just standard. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). Whether plea withdrawal is necessary to avoid a manifest injustice presents a question of law, which this court reviews de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A manifest injustice occurs if a plea is not accurate, voluntary, and intelligent. *Id.* The defendant has the burden to show that his plea was invalid. *Id.*

#### *Accurate*

Mumin first challenges the accuracy of his *Alford* plea. A guilty plea is accurate when it is established on the record that the defendant's conduct met all of the elements of

5

the charge to which he is pleading guilty. *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011). "[B]ecause of the inherent conflict in pleading guilty while maintaining innocence," the district court has a particular responsibility to scrutinize an *Alford* plea to ensure that it contains a sufficient factual basis. *Theis*, 742 N.W.2d at 648-49. The better practice for establishing an adequate factual basis involves a discussion with the defendant at the plea hearing about his conduct and the evidence that would likely be presented at trial. *Id.* at 649. This process may include introducing witness statements or other evidence, presenting abbreviated testimony from likely witnesses, or stipulating to documents submitted at the hearing. *Id.*

In addition, the district court must be able to determine that the defendant has agreed that the evidence that the state would likely offer is sufficient to find him guilty. *Id.* Both the strong factual basis for the plea and the defendant's agreement that the evidence is sufficient to convict "provide the court with a basis to independently conclude that there is a *strong* probability that the defendant would be found guilty." *Id.*

Mumin argues that his plea was not accurate because the district court "never acted as an independent analyst of the potential evidence for trial." Rather, he argues, the district relied only on Mumin's own opinions about the evidence that would be presented and that a jury would likely convict him. But the record shows that Mumin provided a sufficient factual basis for his pleas. For the domestic-assault plea, on questioning by the prosecutor, Mumin verified his understanding that: police reports identified two people who saw him arguing with his wife; those witnesses told police, and would tell the jury, that she appeared upset and they saw him put his hands over her mouth; and one of the witnesses saw him

6

bite his wife. Similarly, Mumin responded to the prosecutor's questions that he was aware of witness statements and police reports, which he acknowledged could support a jury's finding that he had violated the domestic-abuse no-contact order.

Mumin argues that the district court did not undertake the preferred practice of establishing a factual basis by introducing witness statements or other evidence, presenting abbreviated testimony from likely witnesses, or stipulating to documents submitted at the hearing. *See Theis*, 742 N.W.2d at 649 (describing these methods). But this practice is not required when, as here, Mumin established an adequate factual basis by acknowledging the state's likely evidence on the record. And the district court's procedure of having the attorneys, rather than the court, question Mumin on the factual basis for his plea does not render his plea inaccurate. *Cf. Raleigh*, 778 N.W.2d at 95 (discouraging the use of leading questions to establish a plea's factual basis, but concluding that an adequate factual basis was established despite counsel's leading questions).

Mumin also argues that the district court never made its own finding that there was a substantial likelihood that he would be convicted at trial. But Minnesota law does not require that, when accepting an *Alford* plea, the district court must routinely make an express finding that a strong probability exists that the defendant would be convicted of the charged offense. *State v. Johnson*, 867 N.W.2d 210, 216 (Minn. App. 2015) (citing *Theis*, 742 N.W.2d at 649). Rather, "[t]he statement in *Theis* concerning what a district court must 'independently conclude' indicates merely that a district court must assure itself that the accuracy standard is satisfied." *Id*. (citation omitted). Here, after the prosecutor questioned Mumin on the factual basis for the pleas, the district court found that he had

7

"provided [it] with a sufficient factual basis on both cases to accept [his] guilty plea." The district court's finding adequately demonstrates its determination that a sufficient factual basis existed for Mumin's plea, and we reject his argument that his plea was inaccurate.

*Voluntary*

Mumin also argues that his plea was not voluntary. A plea is voluntary when it is made without improper pressure or inducement. *State v. Brown*, 660 N.W.2d 670, 674 (Minn. 2000). To determine whether a plea is voluntary, we "examine[] what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. Whether a plea is voluntary presents a question of fact, which this court reviews for clear error. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

Here, Mumin claims that he only entered into the plea agreement because his attorney told him to do so and in order to "go home." But at the plea hearing, Mumin stated that he understood the charges and that he was fully informed of the relevant facts. He also stated that although he was getting credit for time served, he was not pleading guilty just to get out of jail. We conclude that the district court properly credited Mumin's testimony at the plea hearing and did not clearly err by finding that his plea was voluntary.

*Intelligent*

A guilty plea is intelligent if a defendant knows and understands the charges against him, the rights he is waiving by pleading guilty, and the consequences of his plea. *State v. Aviles-Alvarez*, 561 N.W.2d 523, 526 (Minn. App. 1997), *review denied* (Minn. June 11, 1997). "'Consequences refers to a plea's direct consequences, namely, the maximum sentence and fine.'" *Raleigh*, 778 N.W.2d at 96 (citation and quotation omitted). Mumin

8

argues that he did not understand the charges against him. Although at the plea hearing he denied having an argument with his wife, he expressly acknowledged that, based on the evidence the state would likely present, a jury could find him guilty of the charged offenses. And even though he stated at the plea hearing that he was on mental-health medication, he then told the court that his mind was clear and that he understood the plea agreement.

Mumin argues that he was not informed of the maximum sentence and fine associated with the charges against him. Although these terms were not discussed on the record, Mumin signed a plea petition, which sets out the five-year maximum sentence for both offenses. We presume that before entry of a guilty plea, a defendant reviews the plea petition with counsel and understands its terms. *State v. Byron*, 683 N.W.2d 317, 323 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). We therefore reject Mumin's argument that his plea was not intelligently made.

### B. The district court did not abuse its discretion by declining to allow plea withdrawal under the fair-and-just standard.

Mumin also challenges the district court's decision not to allow plea withdrawal under the fair-and-just standard. We review the district court's decision on plea withdrawal under that standard for an abuse of discretion. *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989).

Although it is a lower burden than the manifest-injustice standard, the fair-and-just standard requires more than "simply any reason" for a defendant to withdraw a guilty plea. *Theis*, 742 N.W.2d at 646 (quotation omitted). Allowing a defendant to withdraw a plea "for any reason or without good reason" would "undermine the integrity of the plea-taking

9

process." *Kim*, 434 N.W.2d at 266. In examining whether the reasons for a plea withdrawal are fair and just, the district court considers the reasons in support of the motion and any prejudice to the state as a result of reliance on the plea. *State v. Lopez*, 794 N.W.2d 379, 382 (Minn. App. 2011). A defendant bears the burden of advancing reasons to support the withdrawal. *Kim*, 434 N.W.2d at 266.

Mumin argues that it would be fair and just to withdraw his plea because he suffered from mental-health conditions that affected his memory and he was not aware that he could go to prison if he violated release conditions. But he testified that his mind was clear at the plea hearing, and after reviewing the plea-hearing transcript, the district court found not credible his assertion that he was unaware of the consequences of violating release conditions. We give deference to the district court's credibility determinations bearing on the validity of a guilty plea. *Aviles-Alvarez*, 561 N.W.2d at 527.

Although Mumin argues that there is no prejudice to the state in allowing him to withdraw his plea, the state need not show such prejudice if the defendant does not advance valid reasons why withdrawal would be fair and just. *State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *review denied* (Minn. Dec. 31, 2013). The district court concluded that Mumin did not carry his burden to show that it would be fair and just to withdraw his plea, and, on this record, the district court did not abuse its discretion by declining to allow plea withdrawal.

**Affirmed.**

10